IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-00697-MEH

MICHAEL PITCHER,

    Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY,

    Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant's "Motion for Summary Judgment" ("Motion"). ECF 21. The Motion is fully briefed, and the Court finds that oral argument would not materially assist in its adjudication. For the following reasons, the Motion is granted.

## BACKGROUND

    Although the following is not part of the Court's findings of fact, the Court finds it helpful to provide some background for this case. On or about November 20, 2018, a motor vehicle accident occurred between Plaintiff and an underinsured motorist in Colorado Springs, Colorado. Plaintiff had an insurance policy with Defendant that included coverage for claims involving underinsured motorists ("UIM"). Plaintiff made a claim under that insurance policy. He eventually settled with the underinsured motorist's insurer for that insurer's policy limits. He also made a demand for the policy limits under Defendant's insurance policy. Defendant initiated its investigation of Plaintiff's claim. Before that investigation was completed, Plaintiff filed this

lawsuit, alleging a breach of the insurance contract. Defendant now seeks summary judgment, arguing that Plaintiff breached the insurance policy's cooperation clause.

## STANDARDS OF REVIEW

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the moving party has the burden of proof—the plaintiff on a claim for relief or the defendant on an affirmative defense— his[, her, or its] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to disbelieve it. Anything less should result in denial of summary judgment." *Id.* at 1154 (quoting 11 Moore's Federal Practice, § 56.40[1][c] (Matthew Bender 3d Ed. 2015)). Only evidence for which the content and substance are admissible may be considered when ruling on a motion for summary judgment. *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must

respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324); *see Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) ("On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [its] case in order to survive summary judgment.") (quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007)). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The following are the Court's findings of material facts that are relevant to the Court's analysis and either undisputed or supported by the record, when viewed in the light most favorable to Plaintiff as the non-moving party.

1.  Plaintiff was involved in a motor vehicle accident in Colorado Springs on November 20, 2018. Compl. ¶ 4.[1]

---

[1] When Defendant cites to the Complaint, the Court treats that citation as an admission of the alleged fact for purposes of summary judgment. Fed. R. Civ. P. 56(e)(2).

3

2. Defendant was informed of the subject accident involving Plaintiff on or about November 21, 2018, one day after the subject accident of November 20, 2018. Ex. A, ¶ 2, Affidavit of Michael West.

3. On December 6, 2018, Plaintiff's counsel, King and Beaty, LLC ("King & Beaty"), sent a letter of representation to Defendant indicating that they represent Plaintiff for all alleged injuries and damages associated with the subject accident. *Id.* ¶ 3.

4. On December 14, 2018, Defendant sent King & Beaty a letter acknowledging the December 6, 2018 letter of representation. *Id.* ¶ 4.

5. The December 14, 2018 letter from Defendant to King & Beaty also requested that Plaintiff provide medical records, medical billing, executed medical authorizations, wage loss documentation, and information regarding the liability insurance that would be available to Plaintiff as a result of the subject accident. *Id*.

6. On or about May 24, 2019, Defendant sent a letter to King & Beaty requesting an itemized medical billing statement, an update on Plaintiff's medical treatment, and the declaration page for the liability policy. *Id.* ¶ 5.

7. On or about April 29, 2020, Defendant sent a letter to King & Beaty requesting an update on Plaintiff's treatment, the current medical bills, and the liability limits for the underlying policy. *Id.* ¶ 6.

8. On or about May 14, 2020, King & Beaty sent a letter to Defendant pertaining to a demand for UIM benefits, requesting a response by June 1, 2020.[2] *Id.* ¶ 7.

---

[2] Plaintiff contends that this letter contained all of his "post-accident medical records, medical bills and other relevant documents." Resp. at 4, ¶ 1. To support this, Plaintiff cites to Exhibit 1; however, Exhibit 1 is merely the letter itself and does not contain any other documents. Therefore, the Court cannot find as undisputed that the letter contained such documents.

9. On May 21, 2020, Defendant sent King & Beaty a medical payment ledger. *Id.* ¶ 8.

10. On May 26, 2020, Defendant received King & Beaty's May 14, 2020 letter. *Id.* ¶ 9.

11. On or about May 26, 2020, Defendant requested additional time to respond to King & Beaty's May 14, 2020 letter and requested liability limits for the underlying policy. *Id.* ¶ 10.

12. On June 1, 2020, Defendant received notice from the underinsured motorist's insurer, Allstate Insurance Company ("Allstate"), that it was tendering its underlying policy limits of $250,000 to Plaintiff. *Id.* ¶ 11.

13. On or about June 4, 2020, King & Beaty sent Defendant a letter requesting permission to settle with Allstate for the underlying policy limits. *Id.* ¶ 12.

14. On or about June 9, 2020, Defendant granted permission to Plaintiff to settle with Allstate for the underlying policy limits of $250,000. *Id.* ¶ 13.

15. On or about June 29, 2020, Defendant sent a letter to King & Beaty requesting additional information regarding Plaintiff's medical treatment and wage loss claim under a reservation of rights. *Id.* ¶ 14.

16. Defendant attached blank medical authorizations to its June 29, 2020 letter and requested Plaintiff execute them in order for his medical records to be requested by Defendant. *Id.* ¶ 14.

17. On or about July 29, 2020, Defendant requested an update from King & Beaty, regarding its June 29, 2020 request. *Id.* ¶ 15.

18. On August 21, 2020, King & Beaty, sent Defendant a letter enclosing five years of Plaintiff's medical records prior to the subject accident.[3] *Id.* ¶ 16.

---

[3] Plaintiff's partial denial of this fact is argument and does not create a genuine issue of material fact. Fed. R. Civ. P. 56(e); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (the non-moving party should "'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant") (citation omitted).

19. On September 9, 2020, Defendant sent King & Beaty a letter requesting additional medical information and wage loss information under a reservation of rights. *Id.* ¶ 17.

20. In the September 9, 2020 letter from Defendant to King & Beaty, Defendant informed Plaintiff that it requested a medical records review from Dr. Marjorie Eskay-Auerbach. *Id.* ¶ 17; *see also* Ex. B, Report of Dr. Eskay-Auerbach dated October 19, 2020.

21. Plaintiff stated, in his deposition, that he had never seen Dr. Eskay-Auerbach's report. Ex. C, Plaintiff's Dep. at 76:19–25, 77:1–3.

22. On October 15, 2020, Defendant sent a letter to King & Beaty, requesting Plaintiff undergo an Independent Medical Examination ("IME") with Dr. Hal Wortzel. Ex. A ¶ 18.

23. On October 29, 2020, Defendant sent a follow up message to King & Beaty, requesting Plaintiff's availability for the IME requested on October 15, 2020. *Id.* ¶ 19.

24. On November 5, 2020, King & Beaty sent a letter to Defendant responding to its September 9, 2020 letter. *Id.* ¶ 20.

25. In that letter, King & Beaty informed Defendant that it was working on obtaining an executed medical authorization from Plaintiff. *Id.* ¶ 20.

26. Defendant did not receive an executed medical authorization from King & Beaty and/or Plaintiff prior to commencement of litigation.[4] *Id.* ¶ 21.

27. On November 18, 2020, Defendant sent King & Beaty a letter attaching Dr. Marjorie Eskay-Auerbach's medical records review report. *Id.* ¶ 22.

---

[4] Plaintiff denies this fact because "[a]uthorizations were forwarded to counsel for the Defendant." Resp. at 3, ¶ 26. The Court notes that the proposed fact, as drafted by Defendant, stated that no medical authorizations were received "to date." Mot. at 6, ¶ 26. However, Mr. West's affidavit indicates that no authorizations were received prior to commencement of litigation. Ex. A ¶ 21. Because that fact is supported by the record, the Court modified Defendant's proposed fact to be consistent with Mr. West's affidavit.

28. In this November 18, 2020 letter, Defendant requested all pre-accident medical records pertaining to Plaintiff's previous surgeries, all wage loss information, an update on current medical treatment, and his available dates for an IME with Dr. Wortzel. *Id.* ¶ 22.

29. Plaintiff, in his deposition, stated he had never seen this November 18, 2020 letter from Defendant. Ex. C at 76:10–18.

30. On November 25, 2020, Plaintiff agreed to attend the IME on February 3, 2021 at 10:00 a.m. Ex. A ¶ 23.

31. On December 8, 2020, Defendant sent King & Beaty a letter confirming the IME details. *Id.* ¶ 24.

32. On January 25, 2021, Defendant sent King & Beaty an email with the IME COVID-19 protocols. *Id.* ¶ 25.

33. Plaintiff filed a Complaint in the District Court of El Paso County, Colorado on February 3, 2021 at 9:19 a.m. ECF 3.

34. The central allegation in Plaintiff's Complaint is as follows: "Plaintiff has made a demand upon Defendant Auto-Owners to pay medical bills related to this collision, and Defendant has refused to pay Plaintiff amounts due to [him] under the underinsured motorist coverage, and so Defendant has breached its contract of insurance." *Id.* ¶ 14.

35. Plaintiff attended the IME with Dr. Wortzel at 10:00 a.m. on February 3, 2021. Ex. A ¶ 27.

36. On February 3, 2021, at 1:32 p.m., King & Beaty sent Defendant a letter dated February 2, 2021, stating that the IME "constitutes an examination pursuant to C.R.C.P. 35," requesting an immediate response prior to seeking court intervention. *Id.* ¶ 28.

37. As part of this letter, a draft Complaint was attached. *Id.*

38. Plaintiff had never seen the letter containing the draft Complaint. Ex. C at 77:24–25, 78:1–6.

39. According to Plaintiff, he did not know that a Complaint was filed on his behalf on the same day of the IME with Dr. Wortzel. *Id.* at 77:20–23.

40. On February 12, 2021, Defendant sent King & Beaty a letter, under a reservation of rights, requesting medical records that Dr. Wortzel identified were missing during the IME and an executed authorization for medical records. Ex. A ¶ 29.

41. Plaintiff did not respond to the February 12, 2021 letter from Defendant. *Id.* ¶ 30.

42. Defendant answered Plaintiff's Complaint on March 1, 2021 in the District Court of El Paso County, Colorado. ECF 5.

43. Defendant removed the case to federal court on March 8, 2021. ECF 1.

44. Plaintiff's policy with Defendant states, in relevant part, the following:

SECTION V—WHAT YOU MUST DO AFTER AN ACCIDENT OR LOSS

    1. NOTIFY US PROMPTLY
- a. **You** and any person seeking coverage under this policy must notify **us** promptly as to how, when and where the accident happened. **We** must have the names and addresses of any injured person and of any witnesses. Notice and documentation of loss must be given if **we** require it.
- b. Any person making claim must:
  (1) give **us** written notice and documentation of loss;
  (2) submit to examination by physicians **we** select as often as **we** require; and
  (3) authorize **us** to obtain medical reports and other pertinent records.

    **We** must be given copies of the legal papers if **suit** is brought against any person believed to be legal responsible.

    Failure of any person entitled to Uninsured Motorist Coverage to comply with these provisions shall invalidate the coverage provided by this policy if **we** show by a preponderance of evidence that **we** were prejudiced by the delay.

    2. ASSIST AND COOPERATE

        a.    **You** and any person seeking coverage under this policy must cooperate with **us** in the investigation, settlement or defense of any claim or **suit**. This includes submitting to a statement under oath and giving **us** access to any documents which **we** request .

Ex. A ¶ 31 (emphasis in original).

45.    Through the discovery process in this litigation, Plaintiff forwarded seventeen authorizations to Defendant. Ex. 8.

## ANALYSIS

Plaintiff's sole claim in this case is for breach of contract. Defendant seeks summary judgment on that claim, because it contends that Plaintiff failed to comply with the insurance policy's cooperation clause. Plaintiff rejects this notion, arguing that he fully cooperated and was forced to file suit by Defendant's actions. For the following reasons, the Court agrees with Defendant that Plaintiff failed to cooperate as required by the insurance policy.

"Under Colorado law an insured may forfeit the right to recover under an insurance policy if he or she fails to cooperate in violation of a policy provision." *Hall v. Allstate Fire and Cas. Ins. Co.*, No. 19-cv-02604-DDD-NYW, 2021 WL 119344, at *2 (D. Colo. Jan. 12, 2021) (footnote omitted) (citing *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 564 (Colo. App. 2015)). "'The purpose of a cooperation clause is to protect the insurer in its defense of claims by obligating the insured not to take any action intentionally and deliberately that would have a substantial, adverse effect on the insurer's defense, settlement, or other handling of the claim.'" *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Secrist*, 33 P.3d 1272, 1275 (Colo. App. 2001)). "Non-cooperation constitutes breach only if material and substantial disadvantage to the insurer is proved." *Ahmadi v. Allstate Ins. Co.*, 22 P.3d 576, 579 (Colo. App. 2001). In other words, "[r]ight

to recovery under the policy may be forfeited only when, in violation of a policy provision, the insured fails to cooperate with the insurer in some material and substantial respect." *Id.* Although the inquiry into an insured's alleged failure to cooperate is generally a fact question, "if 'the record can produce no other result' than non-cooperation, the insurer is entitled to judgment as a matter of law." *Hall*, 2021 WL 119344, at *2 (quoting *Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989)).

In *Hall v. Allstate Fire and Cas. Ins. Co.*, the court granted summary judgment for the insurer on the basis that the plaintiff failed to cooperate. 2021 WL 119344, at *2. The court noted that after the plaintiff had sent his initial medical bills, the insurer "attempted to follow up with him on numerous occasions to discern whether he had incurred additional medical expenses." *Id.* The plaintiff "responded to none of those follow-up communications and did not supplement his medical records or bills." *Id.* Instead, he filed suit against his insurer, alleging breach of contract. *Id.* Concluding that the plaintiff breached the non-cooperation clause of the insurance policy, the court reasoned that "[h]ad [the plaintiff] complied with his obligation, he might have provided information that would have convinced Allstate to pay what he believes he is owed, or at least allowed it to investigate his claims further." *Id.* at *3. By instead rushing to file suit, the plaintiff's "refusal to communicate with Allstate put Allstate in the position of paying the claim without first having had the opportunity to investigate it." *Id.*

Likewise, in *Walker v. State Farm Fire & Casualty Co.*, a case cited in *Hall*, the court granted summary judgment in favor of the insurer for the plaintiff's failure to cooperate. No. 16-cv-00118-PAB-STV, 2017 WL 1386341, at *1 (D. Colo. Feb. 23, 2017), *recommendation accepted*, 2017 WL 1386346 (D. Colo. Mar. 17, 2017). In that case, the plaintiff made a claim with his insurer for the theft of personal property. *Id.* at *2. The insurance policy directed that the

plaintiff was to prepare an inventory of the property and required to provide all bills, receipts, and other documentation that would substantiate his claim. *Id.* When the insurer sent an initial letter to the plaintiff, he completed the inventory but did not attach any bills, receipts, or other documents. *Id.* Over the next several weeks, the insurer sent additional letters to the plaintiff, seeking more information from the plaintiff. *Id.* The plaintiff eventually responded to these letters but did not provide any documentation as requested by the insurer. *Id.* The following months saw the plaintiff fail to provide the information sought by the insurer, including verifying or substantiating his proof of ownership over the stolen goods. *Id.* After the insurer indicated it would not provide coverage due to the plaintiff's failure to comply with the terms of the insurance policy, the plaintiff filed suit. *Id.* The court granted summary judgment in the insurer's favor because "[t]he undisputed evidence show[ed] that throughout the investigation [the insurer] requested information and documents from [the plaintiff] that were material to the insurance claim at issue[, and the plaintiff] refused to provide these documents." *Id.* at *8. The court found a breach of the insurance policy's cooperation clause because the plaintiff's actions put the insurer "'in the untenable position of either denying coverage or paying the claim without the means to investigate its validity.'" *Id.* (quoting 1 Allan D. Windt, *Insurance Claims & Disputes* § 3.2 (6th Ed. 2016)).

Similarly, in *Haptonstall v. Am. Family Mut. Ins. Co.*, the court granted summary judgment in favor of the insurer. No. 19-cv-00037-CMA-KLM, 2021 WL 392601, at *9 (D. Colo. Feb. 4, 2021).[5] There, the plaintiff made a UIM claim under her insurance policy following a motor

---

[5] The Court notes that the *Haptonstall* decision granting summary judgment was later vacated. 2021 WL 2682616, at *1 (D. Colo. June 30, 2021). After the order granting summary judgment, the plaintiff appealed to the Tenth Circuit. *Id.* While on appeal, "[t]he Tenth Circuit . . . referred the parties to mediation, where they reached a settlement agreement that is contingent upon [the district court] vacating its" summary judgment order. *Id.* The Tenth Circuit then remanded the case to allow the district court to consider the plaintiff's motion to vacate the judgment. *Id.* Exercising its discretion, the district court vacated its summary judgment order. *Id.* Although it may have been

11

vehicle accident. *Id.* at *1. On June 30, 2016 and August 1, 2016, the insurer requested authorization to obtain the plaintiff's medical and employment records to investigate her claim. *Id.* The plaintiff refused to provide the authorizations, indicating that she would provide a settlement demand package instead. *Id.* She did so in late November 2016, demanding hundreds of thousands of dollars as a result of an alleged brain injury. *Id.* at *2. What medical records plaintiff did provide in her demand package contained many redactions. *Id.* The insurer "repeatedly requested unredacted medical records," and explained why it sought those unredacted records. *Id.* Also, the insurer requested pre-accident medical records and updated records. *Id.* The plaintiff eventually underwent an IME, as requested by the insurer, but when the IME doctor recommended that the plaintiff undergo testing to understand her current cognitive capabilities, the plaintiff "chose to be examined by . . . a doctor of osteopathy, on the grounds that she had not placed her mental health at issue." *Id.* at *3. After the plaintiff filed suit, and after discovery, the insurer moved for summary judgment, arguing the plaintiff failed to cooperate. *Id.* The court agreed and found that "the medical and academic records Plaintiff failed to provide were relevant to the insurer's investigation and that [the plaintiff's] refusal to produce those records materially and substantially prejudiced American Family because it prevented a reasonable investigation under the circumstances." *Id.* at *6 (citing *Walker*, 2017 WL 1386341, at *4).

Here, the outcome must be the same as in *Hall, Walker*, and *Haptonstall* due to Plaintiff's failure to cooperate. By December 14, 2018, Defendant had requested information from Plaintiff, including medical records and other documents supporting his claims for damages. Defendant followed-up with requests for itemized medical billing statements, an update on Plaintiff's medical

---

vacated, this Court cites *Haptonstall* for its persuasive value since the order was not vacated due to a merits-based argument.

treatment, and the underlying policy liability limits in both May 2019 and April 2020. Plaintiff's counsel responded by letter on May 14, 2020 with a policy limits demand and requesting a response by June 1, 2020. Defendant did not receive that letter until May 26, 2020, after which it requested additional time to respond and reiterated its request for the underlying policy limits. On June 1, 2020, the underlying insurer, Allstate, alerted Defendant that it was tendering its policy limits of $250,000 to Plaintiff. Within three days of that notification, Plaintiff's counsel requested permission from Defendant to settle with Allstate, which Defendant granted.

About three weeks later, on June 29, 2020, Defendant requested additional information regarding Plaintiff's medical treatment and claimed wage loss under a reservation of rights. Defendant attached to this correspondence blank medical authorizations for Plaintiff to execute. A month later, Defendant requested an update from Plaintiff' counsel. Three weeks later, Plaintiff's counsel sent Defendant a letter with five years of Plaintiff's medical records prior to the accident. On September 9, 2020, Defendant sought additional medical and wage loss information under a reservation of rights. Defendant also informed Plaintiff that it had requested a medical records review from Dr. Eskay-Auerbach. On October 15, 2020, Defendant requested Plaintiff undergo an IME with Dr. Wortzel. After receiving no response in two weeks, Defendant sent a follow-up letter to Plaintiff's counsel for Plaintiff's availability for the IME. About a week later, Plaintiff's counsel responded to the September 9 letter by informing Defendant that they would work on obtaining an executed medical authorization from Plaintiff. On November 18, 2020, Defendant sent Plaintiff's counsel Dr. Eskay-Auerbach's report. Defendant also reiterated its request for all pre-accident medical records pertaining to Plaintiff's previous surgeries, all wage loss information, an update on current medical treatment, and his availability for the IME.

On November 25, 2020, Plaintiff agreed to attend the IME on February 3, 2021 at 10:00 a.m. Defendant confirmed this date on December 8, 2020, and it sent Plaintiff's counsel information about COVID-19 protocols for the IME on January 25, 2021. At 9:19 a.m. the morning of the IME, Plaintiff filed suit in Colorado state court asserting a breach of contract claim for failure to pay owed benefits under the insurance policy. Dr. Wortzel conducted the IME as scheduled. At 1:32 p.m., after the IME was finished, Plaintiff's counsel sent a letter (dated the previous day) that the IME "constitutes an examination pursuant to C.R.C.P. 35," and requested an immediate response prior to seeking court intervention. Ex. A ¶ 28. On February 12, 2021, Defendant sent Plaintiff's counsel a letter to request medical records that Dr. Wortzel identified were missing during the IME and for Plaintiff to execute an authorization for medical records. Plaintiff never responded to that letter.

Plaintiff argues that he complied fully with the requirements of the insurance policy, and that Defendant's requests for additional information were not specified under the terms of the policy. Resp. at 7–8. Plaintiff is mistaken. He admits that the policy provides that any person seeking coverage must submit to examination by physicians selected by Defendant as often as Defendant required it and authorize Defendant to obtain medical reports and other pertinent records. Ex. A ¶ 31. He also admits that the policy contains the cooperation clause which requires him to cooperate with Defendant in the investigation of the claim, including giving Defendant access to any documents which it requests. *Id.* Yet, it is undisputed that Defendant made numerous requests for additional documentation that were never answered. Moreover, Defendant repeatedly requested for Plaintiff to execute a medical authorization, something explicitly required by the policy. Ex. A ¶ 31 ("Any person making [a] claim must: . . . (3) *authorize* us to obtain medical reports and other pertinent records.") (emphasis added). Although Plaintiff's counsel indicated at

14

one point that they were working on getting said authorization, nothing was ever given to Defendant prior to the commencement of litigation. Certainly, Plaintiff provided some medical records from the five years prior to the accident, but the provision of some documentation does not relieve Plaintiff of his obligation to continue to cooperate with Defendant under all terms of the policy. *See Walker*, 2017 WL 1386341, at *2 (granting summary judgment despite the plaintiff complying with some of the requirements under the policy); *Haptonstall*, 2021 WL 392601, at *6–7 (same).

Further, Plaintiff prevented Defendant from evaluating the IME prior to suit. True, Plaintiff sat for an IME with Dr. Wortzel. However, Plaintiff (albeit, unbeknownst to him) filed suit less than an hour before the IME. Plaintiff's counsel then attempted to frame the IME as an examination done in the course of litigation. This does not invoke the image of an individual seeking to cooperate in the investigation of his claim. Indeed, the point of an IME is not simply to have it done but to allow the insurer to review the doctor's opinions as part of its investigation. Defendant did not have the benefit of knowing Dr. Wortzel's opinions (and thus incorporating them into its evaluation of Plaintiff's claim) when Plaintiff filed suit. *See Hall*, 2021 WL 119344, at *3 ("An insured's non-cooperation disadvantages an insurer when it' prevents the insurer from completing such a reasonable investigation.'" (quoting *Walker*, 2017 WL 1386341, at *4)). Plaintiff claims that he "realized that Defendant was never going to pay benefits pursuant to the underinsured motorist policy and determined that the only way to force Defendant to act appropriately was to file a lawsuit seeking benefits pursuant to the contract." Resp. at 9. But how Plaintiff unilaterally reached that decision without permitting Defendant to review all relevant information, including the results of the IME, prior to making a determination on his claim is unclear. What is clear is

15

that Plaintiff's decision to file suit caused Defendant to be "in the position of paying the claim without first having had the opportunity to investigate it." *Hall*, 2021 WL 119344, at *3.

Plaintiff argues that even if he did fail to cooperate, Defendant has not shown prejudice. Resp. at 10–11. Plaintiff is correct that "an insured's failure to cooperate breaches the contract [only] if the insurer suffers a material and substantial disadvantage." *Cribari v. Allstate Fire & Cas. Ins. Co.*, 861 F. App'x 693, 702 (10th Cir. 2021) (citation omitted). But an inability to complete an investigation is a material and substantial disadvantage. *Id.* Through failing to respond to requests for documents and to execute a medical authorization, and by filing suit on the morning of the IME, Plaintiff denied Defendant a fair opportunity to fully investigate his claim as a matter of law. Plaintiff's argument that Defendant eventually received all the information it requested "through disclosures, discovery or release authorizations signed by the Plaintiff in the discovery process[,]" completely misses the mark. Resp. at 11. Litigation is not (and should not be) inevitable in these types of cases. Under the parties' insurance contract, Plaintiff had the right to submit a claim, and Defendant had a right to investigate the claim with Plaintiff's cooperation. Plaintiff breached that agreement by failing to cooperate, and because Defendant could not complete its investigation, the prejudice to Defendant is self-evident.

## CONCLUSION

As the Court described, the issue of whether an insured complied with the cooperation clause of an insurance policy is generally a fact question. However, if the record leaves no other conclusion but that the insured failed to cooperate, the court may decide the issue as a matter of law. Based on the unanswered correspondence, failure to provide a signed authorization despite numerous requests to do so, and filing suit mere hours before the scheduled IME, the record in this case establishes Plaintiff's non-cooperation as a matter of law. Accordingly, summary judgment

16

in favor of Defendant is appropriate. Therefore, Defendant's Motion [filed November 4, 2021; ECF 21] is **granted**. Summary judgment is entered in favor of Defendant on Plaintiff's breach of contract claim, and the Court directs the Clerk of the Court to close this case.

SO ORDERED.

Entered this 18th day of April, 2022, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge